```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
UNITED STATES OF AMERICA

            v.                          13 CR 356 (RMB)
                                        Conference
VAUGHN RICHMOND

                Defendant
------------------------------x
                                        New York, N.Y.
                                        July 19, 2018
                                        10:25 a.m.

Before:

                HON. RICHARD M. BERMAN
                                        District Judge


                     APPEARANCES

GEOFFREY S. BERMAN
    United States Attorney for the
    Southern District of New York
REBECCA MERMELSTEIN
    Assistant United States Attorney

LAW OFFICE OF EDWARD SAPONE
    Attorney for Defendant Richmond
CHASE RUDDY

-Also Present-
Lisa Faro, USPO (SDNY)
Ana Maria Gonzalez, USPO (EDNY)
```

1           (Case called)
2           THE COURT:  So how are you all?
3           MS. GONZALEZ:  Good morning, your Honor.
4           MS. MERMELSTEIN:  Good morning, your Honor.
5           THE COURT:  Please be seated everybody.
6           Let me tell you what I have and what I do propose to
7   do.
8           First of all, I have a letter from Mr. Sapone, which
9   speaks for itself.  It's dated July 18, 2017.  Among other
10  things, it says -- and you will recall from our last conference
11  which was on June 21, I believe, that probation had reported
12  that they had visited a site where Mr. Richmond said he was
13  working and no one there knew, or at least whoever was there
14  didn't know, anything about Mr. Richmond, and, understandably,
15  that caused some alarm.
16          So Mr. Sapone tries to deal with that in his letter.
17  I know he is not here today because he is, I think Upstate,
18  but, among other things, this letter from Mr. Sapone says that
19  "Mr. Richmond has been hired by Malbasia Management Group in
20  the position of director of real estate development," and he
21  goes on to say, Mr. Sapone does, that "Mr. Richmond will be
22  working full time at a minimum schedule of 9:00 a.m. to
23  5:00 p.m. daily, and his starting salary will be $42,000 per
24  year."
25          Mr. Konstantinos Anastasakis, who has also written on

1    Mr. Richmond's behalf confirming the employment described by
2    Mr. Sapone and his letter to Mr. Richmond, which is in the form
3    of a contract signed by Mr. Richmond and Mr. Anastasakis, and
4    also he writes to Mr. Sapone.  Both of those are dated July 12,
5    and they're attached to Mr. Sapone's letter to me, and I'm
6    going to make them all court exhibits.  So that is number one.
7    Mr. Ruddy, I know you will ably report to Mr. Sapone that fact
8    and everything else we're doing here today.
9             MR. RUDDY:  Yes, your Honor.
10            THE COURT:  And there is also the issue, a March 30,
11   2018 memo from probation, and they remind me that there are
12   violation specifications; that is to say, allegations that
13   Mr. Richmond has not complied with the terms and conditions of
14   supervised release.  And they are only allegations, but there
15   they are.  We do need to have an arraignment with respect to
16   those violations.
17            So I would ask you, Mr. Ruddy, if you or Mr. Sapone
18   have gone over the alleged violations, there are four of them,
19   with Mr. Richmond?
20            MR. RUDDY:  Yes, we have, your Honor.
21            THE COURT:  Mr. Richmond, you went over those
22   specifications with counsel?
23            THE DEFENDANT:  Yes, I have.
24            THE COURT:  Did you all want me to read them aloud
25   today or is it OK to waive a public reading?

1     MR. RUDDY:  We would waive a public reading, your
2  Honor.
3     THE COURT:  What plea would Mr. Richmond like to enter
4  with respect to those specifications?
5     MR. RUDDY:  Not guilty, your Honor.
6     THE COURT:  I'm happy to hear then from, in addition
7  to what we've just done, from probation, counsel for the
8  government and counsel for the defense if they wish to be
9  heard.
10    MS. MERMELSTEIN:  Thank you, your Honor.
11    As your Honor knows, at the last appearance, the
12 defendant in response to allegations from probation that he was
13 in violation of the terms of his supervised release by failing
14 to maintain employment, proffered this job at Malbasia.
15 Probation then visited that address.  There is no Malbasia
16 there.  It's a florist shop.  The woman who worked in the
17 florist shop, Katherine, had never heard of the defendant and
18 didn't recognize his photo.  This most recent salvo of this
19 morning attempts to offer some innocent explanation for that,
20 suggesting that this is some kind of misunderstanding.
21    I don't say this lightly, but it is clear that this
22 letter is fake.
23    THE COURT:  Which letter?
24    MS. MERMELSTEIN:  The letters from Malbasia that were
25 submitted to the Court today, for a number of reasons.

             One, is there doesn't appear to be a Malbasia.

             Two, I would note that the address and phone number listed at the bottom of the purported letterhead on these letters reflects a phone number ending in 9120.  That's not a working phone number.  The phone number associated with that address is slightly different.  It appears to be a typographical error.

             THE COURT:  So this says now area code (212) 361-9120?

             MS. MERMELSTEIN:  Correct, your Honor.

             THE COURT:  And that, you believe, is a mistake at the very least?

             MS. MERMELSTEIN:  It is, your Honor, which I think suggests it's not a real letterhead because you can envision that a real company would quickly become aware of a typographical error with its phone number in its letterhead and fix that matter.

             But more importantly is this:  Notwithstanding that this was submitted to the Court this morning, it seems, in an effort to prevent sufficient investigation of the facts, probation spoken to Katherine this morning -- excuse me -- to George this morning.

             THE COURT:  George?

             MS. MERMELSTEIN:  This letter represents that George and Katherine own the flower shop and that George is the brother of the signatory on this letter.

1           THE COURT:  Konstantinos Anastasakis.

2           MS. MERMELSTEIN:  Exactly.  There is indeed a flower

3   shop called Simpson & Co. at this address and at least internet

4   research suggests that it is owned by a George and Katherine.

5           According to George, he's never heard of the

6   defendant.  There is no Malbasia.  Simpson & Co. is, to his

7   knowledge, not in a building owned by LTA Properties Corp. and,

8   in any event, his family doesn't own LTA Properties Corp., and,

9   more significantly, according to George, he does not have a

10  brother by this name.

11          THE COURT:  By the name?

12          MS. MERMELSTEIN:  By the name Konstantinos.

13          So, admittedly, this was a quick investigation this

14  morning, but it seems almost certain that this letter, as to

15  the prior representations by the defendant, are just lies, and

16  that this letter is itself a fraudulent document that was

17  submitted to the Court.

18          That is incredibly troubling and in some ways more

19  troubling than his failure to maintain employment, is a

20  willingness to submit fake documents and make representations

21  to the Court in connection with his failure to maintain

22  employment and to pay restitution.  This is not, as I

23  understand it, although I was not the AUSA present at the last

24  conference -- this is now a repeated pattern by the defendant

25  to mislead the Court in an effort to avoid responsibility for

1    the fact that he has not maintained employment and has not paid
2    restitution apparently out of some sense that sort of his
3    underlying crime wasn't really his fault, and he shouldn't have
4    to pay restitution.  And so because of --
5                THE COURT:  This is also -- one of these letters, I
6    think perhaps the one from Mr. Sapone said that because of his
7    new employment agreement paying him presumably or allegedly
8    $42,000 a year, he would be able to and would make a $400
9    restitution payment today, or has done that already, and
10   anticipates that there would be no problem in paying
11   restitution going forward in light of that salary.
12               MS. MERMELSTEIN:  Yes, your Honor.  I am not aware of
13   a payment having been made or whether or not one is going to be
14   made today.
15               THE COURT:  Could we ask Mr. Ruddy if that happened?
16               MR. RUDDY:  I have a receipt here, your Honor, for a
17   payment of $400 restitution this morning.
18               THE COURT:  To probation or something?
19               MR. RUDDY:  It was made at the clerk's office
20   downstairs, your Honor.
21               THE COURT:  OK.
22               MR. RUDDY:  I also have a printout, your Honor.  And
23   it's my understanding of the co-defendants in this case,
24   Mr. Richmond has made payments totaling pretty close to or just
25   as much as any other co-defendant in this case.  So I don't

1  think -- obviously --

2  THE COURT: I'm not sure how valuable the metric is,
3  but.

4  MR. RUDDY: No, I just --

5  THE COURT: No. No. I'll take it for -- you know.

6  MR. RUDDY: Obviously, our intention is that he pay
7  more regularly to restitution, but he certainly has paid over
8  time what he's been able to.

9  THE COURT: Sure. I don't know if you are prepared to
10  respond to the assistant. That would be more troubling if in
11  fact she is correct that these attachments to Mr. Sapone's
12  letter are fake. That would be quite shocking, actually.

13  I don't know if you had a chance to talk to
14  Mr. Sapone, but knowing him as I do, I don't think he would --
15  at least I hope he wouldn't, but I don't think he would submit
16  documents to the Court that he knew -- he, Mr. Sapone -- knew
17  were fake. So, of course, I give him the benefit of that
18  doubt. And I don't know yet if they're fake or not.

19  MS. MERMELSTEIN: I just wanted to be clear, your
20  Honor, that the government was, of course, not suggesting that
21  defense counsel had done that intentionally.

22  THE COURT: No, I know that. I mean, I assumed that.
23  So, Mr. Ruddy, that is the problematic part of this.
24  I don't know that we're going to resolve it today, and I don't
25  know if you are up to speed on what the facts are here.

I7JQRICc

1        MR. RUDDY:  Obviously, your Honor, I can say I've
2   worked with Mr. Sapone for seven years and we certainly
3   wouldn't knowingly submit anything to the Court that wasn't
4   truthful.
5        THE COURT:  Sure.
6        MR. RUDDY:  I have not personally spoken with the
7   Mr. Anastasakis, who is purportedly the author of these
8   letters.
9        THE COURT:  Yes.
10       MR. RUDDY:  I've spoken with Mr. Richmond at length
11  about this purported employment.  You know he's told me that
12  they've toured office spaces, that there are, you know,
13  legitimate addresses that they're trying to secure office
14  space; that this is going to be a W2 employment; that it's
15  going to be direct deposit into his account.
16       THE COURT:  It's going to be.  I understood -- I
17  thought that it had occurred already.
18       MR. RUDDY:  In other words, he started the employment,
19  your Honor, but, you know, his first day was officially on
20  Monday, so I don't think he's gotten a paycheck.
21       THE COURT:  Monday, being --
22       MR. RUDDY:  The 16th of July.
23       THE COURT:  OK.
24       MR. RUDDY:  Which is in the offer letter.
25       THE COURT:  That's a helpful date for me to write

1  down.

2  MR. RUDDY: Mr. Richmond has told me, for what it's
3  worth, your Honor, that there is some -- from what I know from
4  Mr. Richmond is that these were family members; that there is
5  some acrimony within the family because the father has passed
6  away and there are state issues. This is a person who I, at
7  least, went online and looked for the website of Malbasia
8  Group, which there is a picture of a Konstantinos Anatasakis,
9  and there are purported real estate development projects in New
10 York and elsewhere that are featured on the website.

11 So I can't speak to all the allegations that the
12 government has raised, but at least from my brief due diligence
13 before court today, it appeared to be a legitimate business.

14 THE COURT: So, what I'm going to suggest is that some
15 more due diligence be undertaken, both by probation and with
16 the guidance of the Assistant and by yourselves, and
17 particularly by yourselves as, say, you and Mr. Sapone to get
18 to the bottom of this because it's worlds apart.

19 If the package that Mr. Sapone presented is accurate,
20 then that's a very positive in the development of the
21 supervision.

22 If, on the other hand, these documents are fake, as
23 the government has suggested, then that's a very negative
24 development, and we will have some sort of hearing, in any
25 event, to figure out which is the truth.

1            MR. RUDDY:  Of course, your Honor.
2            THE COURT:  And I think that that needs to happen
3    sooner rather than later, like next week, for example.
4            Did you want to add anything?
5            MR. RUDDY:  No.  We can make ourselves available at
6    the Court's convenience, your Honor.
7            THE COURT:  And you can within that time, I'm sure,
8    get to the bottom of -- and I know Mr. Sapone would want to get
9    to the bottom of it because it is his very own submission which
10   has Exhibits A and B to it, which the government is saying that
11   is where the fake documents come from.
12           MR. RUDDY:  Yes, your Honor.
13           THE COURT:  How long will it take probation and the
14   government to do --
15           MS. MERMELSTEIN:  This isn't my case, as you know, but
16   the government will be ready next week.  I don't think this is
17   factually complicated.  So it should be set down for a hearing,
18   and the government will be ready.
19           THE COURT:  All right.  Anything else that we want to
20   cover today?
21           MS. MERMELSTEIN:  Your Honor, I think that
22   understanding that the investigation is not complete, obviously
23   given the timing of the defendant's submission of this, there
24   is sufficient basis to believe here that these are not
25   legitimate documents, coupled with the prior representations

from the defendant that have been, I think, very troubling that suggest that he is not taking seriously the conditions and the Court's order here, and in the government's view, he should be remanded.

  THE COURT: So I have a little bit of a different take on the implications. The submission suggests -- I interpreted it a little differently; that he definitely is taking seriously, you know, what his obligations are, very seriously I mean, if in fact those documents are fake, it took a lot of effort, so to speak, to put them together, you know, and make this package presentation. So -- well, just that, you know, a lot of times we have oral presentations in this or other proceedings and things get said that may not be real, but this is an employment contract submitted here supporting the $42,000 a year job. So it would be very unusual, so to speak, for someone if that's not real. I mean, you know -- but, anyway, I think appropriate way would be to have a hearing and to get to the bottom of it for sure.

  MS. MERMELSTEIN: Understood, your Honor.

  THE COURT: Like I said before, it's either very good or very bad depending on what the facts, are which we don't know at this time.

  Do we know -- in fact, Mr. Ruddy has a receipt for $400 that additional restitution has been paid?

  MR. RUDDY: If you would like, I will hand it up to

1   the Court.
2           THE COURT:  OK.  It looks like $401 has been paid to
3   date, your Honor.
4           MR. RUDDY:  The $1, your Honor, was to get a printout
5   of the prior payments just so he had a list that showed the
6   payments.  They charged him 50 cents a page.  So it was $400
7   toward restitution, plus the $1 for the two page printout.
8           THE COURT:  Do you need this back?  I'll make a copy
9   for you.
10          MR. RUDDY:  That would be nice.  Thank you, your
11  Honor.
12          THE COURT:  Anything else from probation?  Do you want
13  to add anything or wait until next week?
14          MS. GONZALEZ:  We'll wait until next week, your Honor.
15  Thank you.
16          THE COURT:  So how about Tuesday, 24th?
17          MR. RUDDY:  Would it be possible to do Wednesday, your
18  Honor?  I just know Mr. Sapone is in Albany through Friday, and
19  I just want to give him potentially more than one day to help
20  get up to speed on this.
21          THE COURT:  Do you want Wednesday, the 25th?
22          MR. RUDDY:  Correct, or Friday would also work for
23  Mr. Sapone.
24          THE COURT:  I couldn't do that.  And I don't think we
25  should go beyond the 25th, in any event.  I could do it at noon

1   on that day.
2              MS. GONZALEZ:  The probation officer is not available
3   on the 25th, your Honor.
4              THE COURT:  All right.
5              MS. MERMELSTEIN:  Your Honor --
6              THE COURT:  I could do -- if it's better for
7   Mr. Sapone on the 24th, I would do it at 2:00 p.m. and give you
8   a little more time there.
9              MR. RUDDY:  That would be preferable, your Honor.
10             THE COURT:  How about that?
11             MS. MERMELSTEIN:  That's fine, your Honor.  Thank you.
12             THE COURT:  Does that solve the problem?
13             MR. RUDDY:  I believe so.
14             THE COURT:  Is that OK with probation and the
15  government.
16             MS. GONZALEZ:  Yes, your Honor.  Thank you.
17             So you should meet and confer before; that is to say,
18  the government and the defense, to figure out what's going to
19  happen at this hearing, who's going to present evidence, I
20  think the government has the burden of proof, and what that
21  evidence if it's going to be by person or by document,
22  whatever, and whether the defense is going to call witnesses,
23  and if so, who?  And if they have any documents, and all that,
24  OK?
25             MS. MERMELSTEIN:  One request I have up front, your

1  Honor, which is that I don't know if the defendant has the
2  information with him in the courtroom, but if not, if he can
3  provide by the end of the day to probation the contact
4  information for the purported Konstantinos Anastasakis.
5          THE COURT:  Yes.  Mr. Ruddy can you help with that?
6  That seems like a reasonable request.  Could you do it maybe as
7  soon as we adjourn?
8          MR. RUDDY:  Certainly, your Honor.
9          THE COURT:  OK.  Nice to see everybody.  Thank you.
10         MS. MERMELSTEIN:  Thank you, your Honor.
11         MR. RUDDY:  Thank you, your Honor.
12         THE COURT:  You bet.
13         Counsel, will it be another assistant on Tuesday or
14  will it be yourself for the hearing?
15         MS. MERMELSTEIN:  I don't know, your Honor.
16  Ms. Cucinella isn't here.  But either she will be here or I
17  will be here.
18         THE COURT:  OK.  Before we go Mr. Richmond, I knew I
19  had something on my mind.  Did we talk at the last conference
20  about some psychiatric evaluation or care or something?  Didn't
21  that come up?
22         MS. GONZALEZ:  It did, your Honor.  We discussed it,
23  and you had asked me for the therapist's opinion on how things
24  were going, and I told the Court I had a very brief summary
25  from the therapist, which I could put back on the record again

1   today.  I've recently been notified by them that Mr. Richmond
2   doesn't pay co-pays when he goes, and he's $300 in arrears on
3   co-pays, but apparently his attendance is satisfactory.
4            THE COURT:  Defense counsel had actually said that
5   they wanted to retain a psychiatrist.
6            MS. GONZALEZ:  That's true.
7            THE COURT:  That's the other aspect and to --
8   Mr. Sapone had said that.  I don't know what's happened in that
9   regard.
10           MR. RUDDY:  I'm not positive about the status of that,
11  your Honor.
12           THE COURT:  That would be helpful for you to follow up
13  with too, and it might be a very good idea.
14           MR. RUDDY:  Yes, your Honor.
15           THE COURT:  OK.  Thanks.
16           MS. MERMELSTEIN:  Thank, your Honor.
17           THE COURT:  Nice to see you all.
18           (Adjourned)
19
20
21
22
23
24
25