```
     i7o2ricC kjc

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,              New York, N.Y.

 4            v.                            13 Cr. 356(RMB)

 5   VAUGHN RICHMOND,

 6                  Defendant.

 7   ------------------------------x        Conference

 8                                          July 24, 2018
                                            2:20 p.m.
 9

10   Before:

11                  HON. RICHARD M. BERMAN,

12                                          District Judge

13

14
                            APPEARANCES
15
     GEOFFREY S. BERMAN
16        United States Attorney for the
          Southern District of New York
17   BY:  BRETT KALIKOW
          SAMSON A. ENZER
18        Assistant United States Attorneys

19
     EDWARD SAPONE
20        Attorney for Defendant

21   ALSO PRESENT:

22   LISA FARO, USPO SDNY

23   ANA MARIA GONZALEZ USPO EDNY

24

25
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

1       THE COURT:  So, the first thing that has to happen in
2  this group, which has not been happening for many months now,
3  is that you all need to learn better how to get along with each
4  other -- that's both the front table and the back table --
5  because this has been an adversary proceeding almost from the
6  get-go, and that's the real problem here.
7       So anybody want to be heard?
8       MR. KALIKOW:  Yes, your Honor.  Good afternoon.  Brett
9  Kalikow and Samson Enzer for the United States.  I am joined at
10 the counsel table by Probation Officers Faro and Gonzalez.
11      THE COURT:  I don't want to hear about you are even
12 calling the F.B.I. and CIA to get to the root of all of this
13 stuff either.  I want to hear a more productive discussion than
14 I have ever heard before from this group as to how we can make
15 this a successful supervision.
16      MR. KALIKOW:  Absolutely, your Honor.  I understand
17 your Honor's point.  Obviously I am new to the case, but I will
18 be on this case --
19      THE COURT:  If you are new to the case, then you have
20 missed this.  There have been more adversary relationships here
21 than I have ever seen, in between particularly the probation
22 department and the defendant, in any other case.
23      MR. KALIKOW:  I understand your Honor's perspective.
24 I have familiarized myself with the history of this case, and I
25 do think and I am hopeful that there can be successful

1   supervision to come in the future.
2              I think that the challenge that we have faced, from
3   our perspective, is that the efforts that -- the rigorous
4   efforts that we have taken and that the probation officer has
5   taken to try to verify what the defendant has stated to them,
6   stated to this court, has been extremely difficult.  And as we
7   have indicated to your Honor as a result of our investigation,
8   we do think that the defendant has been, at the very least,
9   less than forthcoming, if not outrightly misrepresenting the
10  facts.
11             We are hopeful that the defendant will be --
12             THE COURT:  He is not the first person that the U.S.
13  Probation Department has supervised that's ever been a little
14  bit difficult, by the way.  This isn't the first.  We weren't
15  born yesterday in these matters.  So we have had difficult
16  supervisees long before Mr. Richmond came along.
17             MR. KALIKOW:  I understand that, your Honor, and
18  that's why we have been diligent in trying to follow up on the
19  information that the defendant has provided us.  We have been
20  diligent in trying to get to the bottom of it.
21             In terms of what you were suggesting going forward, I
22  do believe in terms of the specifications that there are open
23  issues regarding whether the defendant has complied fully with
24  his obligations to make restitution and has accurately and
25  truthfully reported his income.

1          That being said, the option that I would suggest for
2   the future for the court and that we will consider -- continue
3   to consider with defense counsel would be to modify the
4   restitution schedule to avoid the ambiguous situation of the 20
5   percent of income issue and set a regular schedule that can be
6   verified.  If he makes the payment, he is compliant; if he
7   doesn't make the payment, he is not.  And that would be a way
8   to circumvent a lot of the running around and the trying to
9   track down ambiguous at best, misleading or dishonest at worst
10  statements and information that we have been provided.
11          THE COURT:  Okay.  I've got it.
12          Mr. Sapone.
13          MR. SAPONE:  I always try to get along with everyone,
14  your Honor.
15          THE COURT:  Yeah, I mean, you do, but you haven't been
16  able to work your magic in this particular arena especially.
17          MR. SAPONE:  That's correct.
18          THE COURT:  You have got a difficult assignment.  So
19  you have to figure out a way how to talk to your client in this
20  context and explain to him what he has got to do and what he
21  doesn't have to do, which I think, by the way, he knows
22  already.
23          MR. SAPONE:  So I think we had a hearing scheduled for
24  2 p.m., and I could just represent very quickly, it's not about
25  me, but I was in Albany, and my office had submitted a couple

of letters, and I get a phone call that the letters are bogus and we have a hearing on Tuesday at 2:00, so from Albany I started making phone calls and doing things that lawyers do to disprove that.

THE COURT: I get it. I understand. But what I am saying is, if there were a better rapport between your client and the probation department and vice versa, it would never have come to that.

MR. SAPONE: Yes. Maybe the following comment is not going to be helpful, but I'm going to make it because it is in my --

THE COURT: If it's not going to be helpful and you are going to make it anyway, I'm not sure what value it is going to have.

MR. SAPONE: Well, it identifies --

THE COURT: We only want helpful comments here. We don't want unhelpful comments. Not so easy, huh?

MR. SAPONE: Yeah. I think --

THE COURT: Everybody has been so used to arguing with each other, that it's not so easy to come up with a helpful comment.

MR. SAPONE: I think that there is a climate where it is believed that Mr. Richmond is dishonest from one end and from the other that folks are out to get him. That is how I see it.

1             THE COURT:  Yes, pretty much.
2             MR. SAPONE:   So what I continue to say is --
3             THE COURT:  How do you fix that?
4             MR. SAPONE:  Work, make restitution, listen, comply.
5   The good news I guess is, he has a job now.  Mr. Anastasakis --
6   it's in my letter.
7             THE COURT:  He is here.
8             MR. SAPONE:  He is here.
9             THE COURT:  He is sitting right behind us.
10            MR. SAPONE:  So maybe now with regular employment,
11  regular income, regular restitution payment, there can be some
12  progress.
13            THE COURT:  Yup.  I think that's right.  I think this
14  will help greatly.  So that employment has already begun.
15            MR. ANASTASAKIS:  Do I --
16            THE COURT:  You can, sure.
17            MR. ANASTASAKIS:  May I stand, your Honor?
18            THE COURT:  Yes, sure.
19            MR. SAPONE:  Would you identify yourself for the
20  record, your first and last name.
21            MR. ANASTASAKIS:  Constantinos Anastasakis.
22            THE COURT:  You can come inside.
23            MR. ANASTASAKIS:  Doesn't look the same way on
24  television.
25            THE COURT:  No.  In fact, there you go.

1           MR. ANASTASAKIS:  I'm in real estate development.  We
2    are a family business, give or take, well, give or take.  You
3    follow what I am saying.
4           THE COURT:  Yes.
5           MR. ANASTASAKIS:  To make a long story short, I have
6    got a small real estate development company, at which point I
7    have, over the last year or so -- I just took a blood pressure
8    pill with no water, so it is stuck somewhere here.
9           THE COURT:  We have got some water.
10          MR. ANASTASAKIS:  But I spent about five hours with
11   the U.S. attorneys yesterday, just coming off a 22-hour flight.
12          So to make a long story short, we have known each
13   other for about three years.  We have really been intensified
14   the last six months to a year at full blown.  I unfortunately,
15   as most immigrant family businesses are, as I mentioned to the
16   U.S. Attorney yesterday, we run it very lackadaisically.  We
17   are not organized.  I keep a filing cabinet in my apartment.
18   It is just rent, L & T stuff, that sort of nonsense.
19          So Mr. Richmond, in all fairness, has actually
20   motivated me to not run it lackadaisical.  Guess what?  Let's
21   get an office.  Let's rebrand.  Let's put our Web site
22   together.  Let's move.  Because he has, at least in my opinion,
23   a great deal to offer to compliment where my shortcomings are.
24          So I am more than happy to -- we have been scouting
25   offices for the last two weeks or so.  I, unfortunately, I

traveled because I had business out of state in North Carolina, so I am there and my fiancée is there, so I am there usually Friday through Monday pretty much every week. If I don't show up, she will shoot me. You can quote me on that one.

But to make a long story short, it is a great opportunity, at least I think a mutually beneficial relationship, for lack of a better word. And that being said, I am more than happy to offer him, as I have offered him, employment.

Right now, being that my expenditures are going to be upwards of whatever they are with new office spaces, telephone lines, receptionist, this, that, filing cabinets, stuff that I really haven't done before, because everything is lackadaisical, it is a zoo. We are very sloppy with our family business, as most families are.

So we have already looked at two office spaces, I am looking at one more on Wednesday, and I am prepared to offer him employment because he provides a certain degree of synergy and he complements me. And lastly, look, I'm going to sign up for a one-year lease. If he performs, great. He doesn't, what's my exposure? $50,000? Big deal. Problem solved.

So he has brought a tremendous amount of experience, he is well spoken, he is educated, I don't have to worry about that. I will give him -- on the weekends that I am away, I will give him a corporate -- I mentioned this, I can cap the

1    corporate card. I know he is not going to run to Cartier and
2    go buy a watch. So I will cap the corporate card at a thousand
3    bucks for just the odd martini at the Peninsula, what have you.
4    And that being said, that's pretty much it.
5             THE COURT: All right. So the question is, is he on
6    the payroll yet?
7             MR. ANASTASAKIS: He has not. No. We have not
8    identified an office space. I am going to do that this week.
9    And of course I was traveling. I was on a 24-hour flight the
10   day before. I met with the U.S. attorneys yesterday. They
11   kept me all afternoon, at 2:00 for me, your Honor. Forgive me.
12   I am still a little jet-lagged. My ears are still clogged.
13            THE COURT: We have been trying to --
14            MR. ANASTASAKIS: I will have office identified, I
15   would say, most likely by the end of this week if not by the
16   beginning of next. And once I identify office, then he is on
17   the payroll. As of yet he has not received any money from me,
18   none whatsoever.
19            THE COURT: So that's our concern because everybody
20   here has been motivated to help him get employment, but it
21   hasn't happened.
22            MR. ANASTASAKIS: He is guaranteed employment from me
23   at this point. I have looked at two spaces so far. I have one
24   more meeting on Wednesday. It is just a question -- because
25   I'm a little bit of a -- forgive me, for the colloquialism -- a

i7o2ricC kjc

1  stickler.  I don't want something sloppy.  If I'm going to do
2  this, and we are going to do this, I want it pretty.  I want
3  glass.  It's effect.  I'm all about that.  Because that's how
4  you entertain clients in the business that I am in.  So with
5  that being said, I want the right space.  I looked at one.  I
6  didn't like it.  I looked at the second one, I like it.  I have
7  two more to see on Wednesday.  I should have it wrapped up by
8  the end of the week.
9        THE COURT:  In midtown?
10        MR. ANASTASAKIS:  Yeah, midtown.  The Wednesday one is
11  in Bryant Park I think, right?
12        THE DEFENDANT:  Yes.
13        MR. ANASTASAKIS:  Bryant Park.
14        We own a family -- one of -- our family owns a
15  building on 36 West 44th Street, the Bar Building.  That's my
16  Uncle John's.  I looked in there.  Uncle John is 85 years old.
17  His offices are -- he walks around with Jesus hands.  Forgive
18  me for that, but we are a typical Greek family.  So he walks
19  around, and it is very dirty in there.  I didn't like it.  So I
20  passed on that.
21        I looked at a work space called Jay Suites.  That was
22  nice.
23        And then we have the one in Bryant Park and the other
24  one on Long Island City, which I can't remember the bloody name
25  of it.  Because I live in Astoria, and I would much -- and I

1  don't drive --
2         THE COURT:  I get it.
3         MR. ANASTASAKIS:  -- and I don't do the train thing
4  either, so it's Uber, and LIC for me would be perfect.
5         But unfortunately most of my meetings are conducted --
6  like I said, it is lackadaisical.  I have been doing it for 20
7  years like this.  When I need to see a client, I go to the
8  Peninsula, I go to the Stanhope, I go to the Sherry-Netherland,
9  we have a drink at the bar, business concluded, and then we
10 show up at the attorney's office for the closings that's all it
11 is.
12        THE COURT: All right.  Well, that's very helpful.
13        MR. ANASTASAKIS:  Okay.
14        THE COURT:  No, I have got it.
15        MR. ANASTASAKIS:  Am I okay?
16        THE COURT:  Yes.
17        MR. ANASTASAKIS:  Thank you, sir.
18        THE COURT:  Anything else from anybody?  So we are
19 going to go off the record, and the second table and the first
20 table can get together and see what modifications you can or
21 should, if any, make to restitution.  That's your contribution
22 for today, is that right?
23        MR. KALIKOW:  Yes, your Honor, restitution and
24 reporting requirements that we can verify what the money -- the
25 employment and the income that he has coming in.

1           THE COURT:  Well, you know how to do that, no?

2           MS. GONZALEZ:  Yes, your Honor.  I certainly know how

3   to visit him at his employment.  The issue has been -- all

4   along has been documenting his income.  He hasn't documented

5   his income at all.  That has been one of the major issues.

6           THE COURT:  Well what you are hearing now, I guess, is

7   that he has not got income, this income hasn't started.

8           MS. GONZALEZ:  No.  But he has had other income over

9   the course of this 14 months that was not ever documented for

10  us and we weren't able to verify the employment.  We went to

11  the site several times and weren't able to verify the

12  employment.

13          THE COURT:  Mr. Sapone, do you know anything about

14  that?

15          MR. SAPONE:  No.  I told him to work and when he has

16  made money, I have told him to pay restitution.

17          THE COURT:  Why don't we go off the record.  You all

18  can meet, if you want to go in the jury room briefly, and see

19  if we can come up with some workable solution to the

20  restitution schedule.

21          MR. SAPONE:  Great.

22          MR. KALIKOW:  Thank you, your Honor.

23          THE COURT:  Then come back when you have finished.

24          MR. SAPONE:  Thank you.

25          MR. ENZER:  Thank you.

1            (Recess)
2            THE COURT:  So what did you come up with?
3            MR. KALIKOW:  Your Honor, we conferred with defense
4    counsel and with the defendant.  We have agreed to
5    modifications of supervised release to be a fixed monthly
6    payment of restitution in the amount of $700 to begin in the
7    month of August; and, in addition to that, Mr. Vaughn will be
8    required to provide monthly reporting to -- monthly
9    documentation to the probation department of his employment and
10   the money that he is earning.
11           THE COURT:  Okay.  That works.
12           And defense understands their obligation?
13           MR. SAPONE:  Yes, your Honor.
14           THE COURT:  Okay.  Anybody got anything else?
15           MR. KALIKOW:  No, your Honor.  We would just ask to
16   put a control date for a future conference.
17           THE COURT:  Yes, I'm going to do that.
18           MR. KALIKOW:  Thank you.
19           MR. SAPONE:  Before we do that, may I be heard on
20   another issue, your Honor?
21           THE COURT:  Sure.
22           MR. SAPONE:  Your Honor, I haven't been paid in my
23   role as counsel, and I was wondering if we could take steps to
24   see if I could be compensated by CJA.  I am on the panel in the
25   Southern District.

1           THE COURT:  I think that's a little tricky.  You could
2    send me a letter about that.
3           MR. SAPONE:  Yes.
4           THE COURT:  Let me look at it in writing, and then I
5    will see if there is anything I can do.  I can't say one way or
6    another right now.
7           MR. SAPONE:  I understand.  Thank you.
8           THE COURT:  Great.  September 26 at 9 a.m.  Does that
9    work for everybody?
10          MR. KALIKOW:  Yes, your Honor.  Actually, if I can
11   have one moment for probation, your Honor.
12          MR. SAPONE:  It works for us, your Honor.
13          (Pause)
14          MR. KALIKOW:  Your Honor, I have just been informed
15   that Southern District Probation Office has a retreat that
16   week, so there will be nobody to be present that week.  If we
17   could do it the week before or after, please.
18          THE COURT:  October 1, how is that?
19          MR. KALIKOW:  That's fine, your Honor.
20          MS. GONZALEZ:  At 9 a.m.?
21          THE COURT:  10:00 on October 1.  Is that okay with
22   you, Mr. Sapone?
23          MR. SAPONE:  Yes, your Honor.
24          THE COURT:  October 1, 10:00.
25          Good.  Good to see you all.

i7o2ricC kjc

1      MR. KALIKOW:  Thank you, your Honor.
2      MR. SAPONE:  Thank you.
3      MR. KALIKOW:  Your Honor, just to be 100 percent sure,
4 has your Honor so ordered the modifications that the parties
5 have consented to?
6      THE COURT:  Sure.  Do you want to submit something
7 written, have me so order it in writing?  That will be great.
8      MR. KALIKOW:  Yes, your Honor, we will do that.
9      MR. SAPONE:  Okay.  Thank you.
10      MR. KALIKOW:  Thank you, your Honor.
11      THE COURT:  Yup.
12                              oOo