J643RICC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                              13 CR 356 (RMB)

VAUGHN RICHMOND,

              Defendant.

------------------------------x

                                              New York, N.Y.
                                              June 4, 2019
                                              12:45 p.m.

Before:

                  HON. RICHARD M. BERMAN,

                                    District Judge

                          APPEARANCES

GEOFFREY S. BERMAN
    United States Attorney for the
    Southern District of New York
BRETT KALIKOW
    Assistant United States Attorney

EDWARD SAPONE
    Attorney for Defendant

ALSO PRESENT:
U.S. Probation Officer Ana Maria Gonzalez, EDNY
U.S. Probation Officer Lisa Faro, SDNY

1           THE COURT:  In anticipation of today's status hearing,
2  I have reviewed the letter that I received from probation
3  dated -- it's recent.  Mr. Sapone, did you date your letter?
4  May 24, 2019.
5           I thought we would go ahead with the hearing today
6  just to get caught up on where things stand for Mr. Richmond,
7  and maybe we could start with probation.
8           MS. GONZALEZ:  Mr. Richmond has paid his restitution
9  up to date.  He apparently he paid today again, making him
10 current even through June.
11          THE COURT:  Is that our number, $700 a month?
12          MS. GONZALEZ:  Yes, that's right.  And everything else
13 is -- his job remains, he works at the same job he's had since
14 last year.  He apparently just moved, since he lost his
15 apartment to foreclosure.
16          THE COURT:  The job, I remember we talked about it the
17 last time, but I can't remember what it is that he's doing.
18          MS. GONZALEZ:  I'll let Mr. Richmond's attorney speak
19 to that if that's okay, your Honor.
20          THE DEFENDANT:  Malvasia Management Group, real estate
21 development.
22          THE COURT:  I think I remembered they were
23 headquartered in Manhattan; is that right?
24          THE DEFENDANT:  That's correct.
25          THE COURT:  So tell me, how do you spell the name of

J643RICC

1  that management group?
2          THE DEFENDANT:  M-A-L-V-A-S-I-A Management Group.
3          THE COURT:  How is that going?
4          THE DEFENDANT:  It's still pretty much the same.  It's
5  going fine.
6          THE COURT:  Well, in terms of what exactly are you
7  doing there?
8          THE DEFENDANT:  My job is to evaluate, as we say,
9  underwrite the real estate opportunity in terms of whether or
10 not it's financially viable, and then to advise on structuring
11 and offer support in terms of helping to get to a close or
12 renovation, whichever is necessary, or both.
13         THE COURT:  So any closings that you're responsible
14 for?
15         THE DEFENDANT:  Well, we're working on -- North
16 Carolina fell out but it looks like it's coming out.  It looks
17 like that opportunity is coming back.  We're working on one
18 project here in Brooklyn on Fulton Street.  There's a new
19 opportunity that was just presented last night, not too far on
20 West 24th Street here in New York City.  There is -- what else.
21         THE COURT:  Any that you closed?  That you actually
22 closed in deals actually?
23         THE DEFENDANT:  No, we haven't actually closed.  No,
24 we have not.  Not at this point.
25         THE COURT:  What about renovations, any of those

J643RICC

1   happen?
2           THE DEFENDANT:  We have participated in four small
3   renovations.  Small renovation projects.
4           THE COURT:  You get a salary?
5           THE DEFENDANT:  I get a salary.
6           THE COURT:  If I might ask, how much do you get paid?
7           THE DEFENDANT:  42,000.
8           THE COURT:  Are you in good standing with your
9   employer?
10          THE DEFENDANT:  Yes.
11          THE COURT:  So in other words, your salary is not
12  contingent on deals actually closing.
13          THE DEFENDANT:  No, it's not.  He understands that --
14  no, it's not contingent on deals closing.
15          THE COURT:  So, it is a full-time job I take it?
16          THE DEFENDANT:  It is.
17          THE COURT:  Does that help you, probation, that
18  information?
19          MS. GONZALEZ:  Sure.
20          THE COURT:  Okay.  Let me just look at the judgment
21  here.  So the supervision is, is it essentially light
22  supervision or you see him often or how does that work?
23          MS. GONZALEZ:  Generally he reports to the office
24  every month, although he missed in May.  He generally reports
25  to the office every month, so I see him on a monthly basis.

J643RICC

1       THE COURT:  In person?

2       MS. GONZALEZ:  Hmm-hmm.

3       THE COURT:  Anybody want to add anything to
4  probation's point of view?

5       MR. KALIKOW:  No.

6       THE COURT:  How about the defense.  Mr. Sapone?

7       MR. SAPONE:  Not on that issue, your Honor.

8       THE COURT:  On any issue?

9       MR. SAPONE:  May Mr. Richmond sit down?

10      THE COURT:  Sure.

11      MR. SAPONE:  So your Honor, as counsel, I always want
12 the Court to be satisfied with a client's progress and to feel
13 that whatever is in place is appropriate.  And I try to balance
14 that against the client's wishes, if I can assist in making a
15 defendant feel that his voice is heard.

16      So, here, as it relates to the therapy, it's my
17 impression that the Court probably would want Mr. Richmond to
18 continue with therapy.  He goes once a week on Thursdays.  But
19 in discussions with Mr. Richmond, it's become clear to me that
20 his opinion would be that it's not very helpful, and he's
21 working every day, and what he does every Thursday is he stops
22 work to get in the car and rush 12 miles in traffic.  And
23 between the therapy session itself, and the traveling, it's
24 around four hours a week that he feels is not very productive.
25 So I wonder --

J643RICC

1           THE COURT:  What does the therapist say?
2           MR. SAPONE:  Well, the truth is, this just came up
3  now, 10 minutes ago, so I don't know what he would say.
4           THE COURT:  "She."
5           MR. SAPONE:  She would say, excuse me.
6           THE COURT:  So that's a little bit by the seat of the
7  pants.
8           MR. SAPONE:  Yes.
9           THE COURT:  For my point of view.  So, do you have an
10 opinion?  My personal view is if you are seeking termination, I
11 would need to hear from the therapist as to why termination is
12 a good thing or what's been accomplished.  Everything that's
13 been accomplished, that kind of thing before I could make a
14 determination like that.
15          MR. SAPONE:  Then would I write to the Court or wait
16 until the next appearance.
17          THE COURT:  You could do either one.  You could also
18 talk to probation about it, see how they feel.  So when you
19 write, if in your letter you could also share their insight and
20 their position.
21          MR. SAPONE:  Sure.  So prior to me speaking with the
22 therapist, which I will do, and thank you for that, I did run
23 it by probation.  It is my understanding that they would not be
24 opposed to termination of therapy, and that in fact, in the
25 beginning when Mr. Richmond was first evaluated, it was the

1   opinion of the evaluator that he didn't need the therapy.  But
2   I will speak to the therapist, get back to probation, and share
3   what I learned.
4              THE COURT:  And maybe you could get from the therapist
5   what they've accomplished in the therapist's view.  Does she
6   think that it's necessary, etc.
7              MR. SAPONE:  Thank you.
8              THE COURT:  You bet.
9              Anything else anybody wants to cover?
10             MR. KALIKOW:  Your Honor, I would just add, so as your
11  Honor knows, Mr. Richmond does have monthly restitution
12  obligations, which as the probation officer has noted, are now
13  current.  The pattern to this point has generally been that
14  payments have been made very close to -- sometimes in advance
15  or shortly after conferences have been scheduled.
16             THE COURT:  Now there's a shocker.
17             MR. KALIKOW:  Yes.  It is perhaps to be expected.
18  Mr. Richmond's supervision, as I understand it, is scheduled to
19  terminate on October 10, 2019.  In order to continue to ensure
20  that the restitution payments are being made appropriately, we
21  would ask for a status conference to be set close to but in
22  advance of that date, perhaps towards the end of September or
23  early October.  And to the extent that Mr. Richmond is current
24  at that point, we would request to be able to write to your
25  Honor to request that the conference be adjourned.

1       THE COURT:  Okay.  Let me give you a followup date.
2  Remind me, if you would, this is probably a task for the
3  government, if Mr. Richmond stays current with his restitution,
4  where would he be at October of 2019 in the broader scheme of
5  things?  His restitution amount is a pretty big number.
6       MR. KALIKOW:  Yes, your Honor.  I don't have the
7  calculation in front of me of the total amount of restitution
8  paid to date.
9       THE COURT:  That's probably a small portion of
10  $200,000.
11       MR. KALIKOW:  That would be our expectation, your
12  Honor.
13       THE COURT:  So you should be planning a visit with the
14  financial litigation unit as we approach the October date,
15  assuming everything is going well.  I was going to say
16  September 17 at 10:30.  Hopefully it will be the final
17  conference.
18       MR. SAPONE:  That's good for us, your Honor.
19       THE COURT:  Okay.  Is that all right for everybody
20  else?
21       MS. GONZALEZ:  Yes, your Honor.  Thank you.
22       MR. KALIKOW:  Yes, Judge.  Thank you.  The 17th at
23  10:30, your Honor.
24       THE COURT:  Yes.
25       MS. GONZALEZ:  That appearance is contingent upon --

1    THE COURT: To me it's not contingent. To me it is an
2    appearance. So, if a reason for it not happening shows up, I
3    guess I'll read about it. But I think you should plan on being
4    here. Okay? Great. Nice to see everybody.
5    MR. SAPONE: Nice to see, your Honor. Thank you very
6    much.
7    THE COURT: By the way, just to your point, I wasn't
8    being facetious when you said the payments come in proximity to
9    the scheduled conferences. In point of fact -- and you also
10   should probably know I hold these conferences in most every
11   supervised release situation, and one of the reasons is that,
12   for whatever reason, it has some effect in most instances one
13   way or another on performance during supervision. So, that's
14   point number one.
15   Point number two, this is really for Mr. Richmond's
16   benefit particularly, and Mr. Sapone. So, supervised release
17   is not a penalty phase. It's not like a term of incarceration
18   which has some punitive aspects to it. Supervised release is
19   the period when people make productive development which has
20   led them away from the reason that we all got here in the first
21   place, and it's designed to be helpful. So, and lots of
22   people, when it comes to therapy, because therapy is not an
23   uncommon aspect of supervision, particularly in my cases,
24   people do say that, oh, it's a pain in the neck to get there,
25   got to get in the car and all that stuff. Sometimes that's

J643RICC

1  because it's not so easy to be in therapy, and to be on time,
2  be regular, and also communicative with the therapist.  So, a
3  lot of people find it uncomfortable, actually, which is
4  actually one of the things that it probably is supposed to be,
5  at least for some period of time.
6              MR. SAPONE:  Yes.
7              THE COURT:  So, but anyway, so that is one of the
8  reasons I do have these periodic conferences, is not only to
9  see how things are going, but hopefully to help things continue
10 to go in the right direction.
11             MR. SAPONE:  Yes.  So before I call the therapist, I
12 think Mr. Richmond and I should spend some time together.  Yes.
13             THE COURT:  Exactly.  Great.  Nice to see you,
14 Mr. Richmond.
15             MR. KALIKOW:  Thank you, Judge.
16             (Adjourned)